Michael D. Hurd, Jr. v. District of Columbia Gov. Mr. Rowe v. Appellant Ms. Van Zyl v. Appellee Mr. Rowe, please proceed when you are ready. Thank you, Your Honor. May it please the Court, my name is Eric Rowe. I represent Michael D. Hurd, Jr., the appellant in this case. This case boils down to really a single issue, whether the District of Columbia's liability under 42 U.S.C. section 1983 requires a showing of subjective malfeasance or fault beyond the constitutional violation that was shown to exist. Section 1983, and for this reason, the decision below must be reversed. Section 1983 is plain in its terms. It applies to every person who subjects or causes to be subjected any citizen of the United States to the deprivation of rights, privileges, or immunity secured by the Constitution. Those are the two elements of section 1983, a person and causing a deprivation of rights. The District of Columbia is a person and the District of Columbia is liable to Mr. Hurd if it caused Mr. Hurd to be deprived of his constitutional rights. Under that statute, causation is all that is required. There is no subjective requirement of malfeasance or fault. And this, in fact, was the ruling of the Court in the Manel case, the seminal case that determined that municipalities could be held liable under section 1983. The Court concluded that the language stating that when the municipality causes a person to be subjected to a deprivation of rights, the Court concluded that that, quote, plainly imposes liability on a government that under color of some official policy causes an employee to violate another's constitutional rights. In this case, the District of Columbia caused its employee, Mr. Siebert, to refuse to release Mr. Hurd on October 2, 2011, and the District of Columbia caused Mr. Hurd to be kept in jail for an additional two years. The District of Columbia's policy in that regard is even set out in the District's own brief submitted to this Court. District of Columbia says, when a court orders an inmate released in a particular case, officials must check all records to determine if there is any other charge or detainer requiring the inmate's detention, and if so, must hold him at the D.C. jail. Where are you reading from? The appellee's brief, page 19, Your Honor. Okay. That is exactly what happened here. The D.C. And your concern is that they do that, or that they do that without affording any pre-reincarceration process? That's the constitutional violation, Your Honor. The constitutional violation here was that they did not afford Mr. Hurd a pre-deprivation hearing. There's lots of talk about whether this policy was constitutional or not, but I had thought the whole issue in this case was the fact that they have that policy, and it doesn't include pre-liberty deprivation process as part of their policy. It's just to keep them. That's right, Your Honor. But that's the constitution. I don't know why you're separating that. That's what I don't understand. Their policy is, if we find something in the records, keep them, not keep them and start a process. Correct. It's keep them and no process. That's their policy. That's correct. Unless you think their policy includes process or doesn't include process? The policy here does not include any process. I don't know why you keep separating that out. I understand that's your constitutional argument, but then it's also a critical aspect of their policy. Correct, Your Honor. The issue here is whether or not the District of Columbia, as opposed to Mr. Siebert, caused Mr. Hurd's deprivation to occur. Those are separate inquiries. Here what- Deprivation without process to occur. The prior opinion of this court was that there's a procedural due process issue here. Correct. I think it has to be spoken of in terms of deprivation without process. Well, and we also have a substantive due process claim, too, as well, Your Honor, in this case, because Mr. Hurd was entitled, having served his sentence in full, to be completely done with his sentence. When they kept him and reincarcerated him again, after he had already served his sentence in full, that violated his right to substantive due process, as well, because under the Fifth Amendment, you can't deprive anybody of liberty without- No, I understand that, but it seems to me it's still tied to the fact that they have no process associated with this records check in detention, because presumably that process would allow them to discover, if they agreed with you on your substantive due process argument, that, oh, notwithstanding this record here, he, in fact, does not need to be detained or reincarcerated. There has to be some mechanism for checking to make sure the computer records are valid. Right, and in this case, they were presumed to be valid. And when they found this prior sentence, they assumed that the prior sentence had not been served and just kept him. They did not allow him, as he was entitled to be, at this point in time, there was a superior court order requiring his release, and he had, in fact, served his prior sentence in full. So, then, I don't understand what the procedural due process is adding to your case, then, because if your view is that they have a policy that says any time somebody has an unexpired prior sentence, then he's going to be held. What does more process get you? Because that's just what they do, and what would more process do? Well, in this particular case, if Mr. Hurd had been afforded a hearing, then he would have been able to present his case and say, I have served my prior sentence in full. And, in fact, when he was confronted with the prior sentence there at the jail on October 2nd, 2011, his first response was, this is done, and when do I get a lawyer? And the response that he was given was, you have two years to go and you don't get a lawyer. And that's part of the problem here. But the specific question that is before the court at this point is whether or not the district has a viable for that. And the question is- So, would the additional process then would have gotten you as an opportunity to make the argument that the district was compelled to treat the sentence as having been served because too much time had elapsed? Well, first, your honor, at this point, I mean, they didn't have the authority to keep him to begin with. And so, in order for a procedural due process pre-deprivation hearing, they needed to release him on Sunday, October 2nd, 2011. And then they could have petitioned the Superior Court or they could have petitioned the Board of Prisons or somebody else to say, this gentleman has two more years to serve on his sentence. And it could have been litigated at that point. Instead, they just kept him. But when you say they didn't have the authority to keep him, that's the- is that not the substantive argument that they don't have substantive authority to keep him because he's been out for too long and the sentence should have been treated as having run while he was out? I think the facts are, your honor, that even absent that, the DC jail didn't have the authority to decide on its own whether or not he should be kept. That authority is- would have been given to the Board of Prisons if he was still subject to theirs, to the United States Attorney General if he was subject to that jurisdiction, or to the District of Columbia Superior Court. When you look at the procedures that were adopted in the District of Columbia for pre-release, there is a provision in there that talks about the release authority, and the release authority does not include the DC jail. And so they needed to go to somebody else for authority to keep him under those circumstances. And so ultimately, the question, though, is, you know, why did they keep him? And the answer is that the instructions that the District of Columbia had given to Mr. Seabrook told him not to let him go. Okay, your honor, I see my time- I'm into my rebuttal time, and if there are other questions, I'll just reserve the rest for rebuttal. Just make sure my colleagues don't have further questions for you at this time. No. Thank you, Mr. Rowe, and we'll hear from the District. Ms. Van Zyl. Good morning, and may it please the Court, Caroline Van Zyl, on behalf of the District of Columbia. The question raised in this case is whether, under Monell, the District is responsible for a low-level employee's decision to re-incarcerate Mr. Heard based on an unserved misdemeanor sentence. That inquiry is governed by what the Supreme Court in Connick v. Thompson called a long-standing rule- It's- You're surely not blaming this records officer for- you made this initial judgment there's a record here that's got to be served, but are you saying that he's single-handedly kept Mr. Heard incarcerated for 27 months? That requires a lot more than a single officer looking at some records. Well, your honor, I would say that- Columbia. Well, your honor, there's no evidence here that any policymaker was involved in Mr. Heard's detention. So it's really like this one low-level person can say, go back to jail and stay there for 27 months and nobody else has to sign off on it? Your honor, there's evidence that Mr. Heard did consult with the chief records officer, but not with the director of the department. A records officer can decide that someone should be incarcerated for 27 months? Well, your honor, what Mr. Seibert said and what, in fact, the Superior Court said here was that it was not Mr. Seibert or any policy really of the Department of Corrections that was responsible for the detention, but it was the court's order directing that the misdemeanor sentence be served, which hadn't been vacated. Computer records make mistakes all the time. And in fact, in this particular case, he filed a habeas petition and the attorney general of the District of Columbia, and he raised his due process argument and the attorney general of the District of Columbia filed a brief that said, no, he stays in jail. Is the attorney general a policymaker? For purposes of who is detained by the Department of Corrections? Making a decision that the District of Columbia believes that this person should stay in detention without due process? Is he a policymaker on that? I think the question here is, who makes policies to when and whether folks are detained in the Department of Corrections? And I think it's to that question. Detained without due process. He filed his habeas petition and the attorney general said he stays in without having gotten any process. Well, your honor, respectfully, I would push back on that. I mean, by the time we're in the habeas process, he is getting process. He is having the opportunity to be heard, not even just through some informal administrative mechanism, but by a court, by the court that sentenced him. Did our prior decisions say that after the fact, self-initiated process by the incarcerated person is sufficient? I mean, no one would say for a criminal conviction, if they just put you in jail and let you file a habeas petition, that that was sufficient process for having put you in jail without having had pre-deprivation process. So I don't see why that's relevant here. Surely that's not the district's position. Well, your honor, so at this point, we're talking about the substantive constitutional question and- No, I'm just talking about the procedural due process question. Okay, well, I think what we're talking about here on this appeal is Manel liability. That's what the district court based its determination on. And I would know- Your position is that the single record officer, Mr. Siebert, can type some stuff into a computer, look at it, and say, go to jail for 27 months without any process, any check to see if the computer's accurate, if it's been updated, if the records are accurate, if this person is the same person. You said that he single-handedly incarcerates him. And I just find that, I think it takes the district to detain someone for 27 months in a prison cell. And it's confirmed here by the fact that the attorney general weighed in and said, no process for you, stay in jail. Well, your honor, I have two responses to that. One is substantive and one is procedural. So on the substantive point in terms of pre-deprivation process, if we're talking about procedural due process before deprivation, that constitutional, alleged constitutional violation was already complete by the time we're in the habeas process, right? I mean, he's already been incarcerated without pre-deprivation notice and an opportunity to be heard, allegedly. And in terms of the substantive due process as well, by the time the court, by the time the superior court says on the record after considering briefing, you need to stay in prison, at that point, it's not the district that's causing his incarceration. There's a superseding cause, which is an additional court order. On the substantive- How much time elapsed between the filing of the district's brief and the habeas petition and the superior court's ruling? I don't believe that it was a long period of time, your honor. But in any event, the procedural point here is that Mr. Hurd has never argued that a policymaker made the decision to keep him in prison. There's no evidence in the record of that. He has never argued- Yeah, but he said there's this record thing here, and he just got thrown in jail because of the records without anyone checking to find out what was really going on. And it is the district's policy to have this record check made. And the district's policy was to set up a record check that sent you directly to jail, go immediately to jail, do not pass go, and without any process. Isn't that the district's policy, is if this person finds a record? That's my understanding from your brief, he had no choice, you said, because it's a district policy. If they find this in a record, he goes to jail. No process, no double checks. No, your honor, that is not the district's policy. And I think it's helpful to break this down into different theories of Monell liability to trace where the policy would be coming from, right? Under Baker, this court set forth a few different ways that you can prove the existence of an unconstitutional policy. And the first is the explicit setting of a policy by the government that violates the Constitution. As we've been discussing this, it seems that the court thinks that there is some sort of explicit written policy that required Mr. Seibert to do what he did. But that is simply not the case. And in fact, the plaintiffs here acknowledged as much at JA-488 in their response to our dispute of material facts. Did Seibert have discretion not to do this? Based on the policies? Yeah. I think so. What about the part of your brief that the counsel read from? Because to me, it seems to me that your argument is, Seibert might have been off on a frolic and detour, but then that's not something that can be attributed to the city. Correct. So then the question becomes, is that right? Was he off on a frolic and detour? Because if there is a policy that says, no questions asked, whenever there's a record that indicates that someone has an unexpired portion of a sentence, we just detain him, continue to detain him. At that point, the person who's implementing that policy is just implementing a policy that exists. And so the question in my mind is, does that policy exist? And then as Mr. Rowe pointed out in your brief, in the paragraph that talks about explicit policies, it just says that when a court orders an inmate released, officials must check all records, and if so, must hold him at the DC jail. Is that not the policy? So if you read the sentence, it says, must check all records to determine if there is any other charge or detainer requiring the inmate's detention. A charge or a detainer is not an unserved misdemeanor sentence. The charges in this case had been disposed of by the court. This individual had been sentenced. And everyone agrees that there was no detainer. And I think what we're paraphrasing in that portion of our brief is DC Code Section 24-211.02a, which says that DOC shall process and release inmates unless the inmate is to continue confinement pursuant to another charge or warrant. There was no charge or warrant here. This is categorically different. So did Cybert, did he do something wrong under DC policy? Did he violate, did he infringe DC policy? Is your argument that, well, there is no DC policy on this. We just leave it up to individual people at Cybert's position to just decide what to do. And then their decision on this issue, which seems pretty significant, just takes on its own operative force. And that just essentially becomes the result. But that is our position. And obviously, there's a second question as to whether these kinds of situations are so obvious that the district needed to have a policy. But there certainly is no written official policy mandating that he do what he did. And he said this in his deposition. At JA245, he says, I don't think there was ever anything official when situations like this arose. And that is true. In all of the briefing that has transpired in this case, I'm not aware of any citation to any policy that would govern reincarcerations based on unserved sentences. And in fact- In the summary judgment argument in the district court, I'm an A618, you said that he had no, Mr. Cybert had no other option. And that was based on the uninspired judgment and commitment from Judge Holman. Exactly, Your Honor. I mean, I think that context was- Based on the judgment and commitment of Judge Holman. So it's not just detainers, and it's not just- I thought you were saying with respect to that sentence in your brief, it was just detainers and charges. But now from your argument in the district court, it was also this very judgment. Mr. Cybert had no choice under district policy but to hold him in the D.C. jail. Not under district policy, Your Honor. Under the court's order. Under the court's order. And at the habeas hearing, the Superior Court confirmed that. It doesn't say what to do if he's being held in something else and someone checks a computer and sees that this thing is still out there, and should we have a process to sort out whether it's still accurate, whether it's still live, what's happened. The district court's order doesn't speak about this situation at all. I mean, to be frank, Your Honor, so at JA113, this is the Superior Court. It says, in the court's view, they, the Department of Corrections, have an obligation, based on that prior order, to hold him until the court makes- Sorry, I'm having trouble. Sorry, I'm trying to find the page because the page numbers are on top of other numbers, and I'm having trouble finding it. I understand, Your Honor. 113. Oh boy. Sorry, was this the habeas ruling? Yes. No, but that's- That's a different decision altogether. You can't use the habeas ruling a year, year and a half later, to say that was the basis for Mr. Siebert holding him back when he first held him, and the original order of judgment and commitment by Mr. Holman, which is what is being referenced in the summary judgment argument there, was that he had the sentence to serve, but that's a completely- It didn't say, and he darn well will serve it. I don't care how long he's been out. I don't care if there's been confusion between the government and he's actually spent that time under supervision, the substantive due process argument. I don't care if there's any mistakes. If this thing is still in the computer system, you've got to lock him up. That's not what the original order said in any way, shape, or form. It was this record check and detain policy that did that. But Your Honor, what policy? I mean, so there is a policy to be sure that records are checked. The policy that you said Mr. Siebert had no option for at summary judgment. So again, what trial counsel, I think, was referring to, and again, trial counsel's comments aren't evidence, but I think if you read it in context, he's saying there was a court order. He's not saying that there was a policy that required X, Y, or Z. What court order are we talking about? Just to refresh my memory. The original, the 2006 judgment, which sentenced him to serve. On page 19 of your brief, when you said, if there's a charge or detainer, that's policy. Are you telling me that if it's, if you would not say if there's charge, detainer, or outstanding court judgment? No, there's simply no, no, there's not. And, and Mr. Hurd has acknowledged as much again, in his response to our statement of undisputed material facts, 488 of the joint appendix, he said, with regard to over-detention, there are no written policies and procedures in place. It doesn't necessarily, it doesn't necessarily have to be written to be an explicit policy if it's stated and followed in some, even if it's verbal. But I guess my question is, do you disagree with the statement there that he had no other options given that there, if it's the court order that has, that imposes the original sentence and the existence of a court order that imposes the original sentence as to which sum of it is unserved, leaves the individual making the call on the ground with no other options, then isn't there a policy that says that as long as there's an unexpired sentence, the individual will remain detained? Well, Your Honor, I think it, I think the question then is whose policy, right? The Department of Corrections had no policy on the score. What, what trial counsel was referring to was he thought that the court order in and of itself did it suffice. I mean, obviously in heard one. It did suffice, right? The court order itself meant that when there's a court order in place, then there's no option other than to keep the person detained. That, that, that was what trial counsel, I believe was trying to convey this court and heard one seems to have indicated that that is not the case. But at that point, we're talking about the mistaken judgment of a low level employee, because again, there, there's no written policy, nor is there evidence of any dictate from someone who would be considered a policy maker, which I think should he, what should cyber have done then if it was mistaken? What should cyber have done? I, I suppose, I mean, he would have had two alternatives. He could have released Mr. Heard, which again, you know, there, there is risk associated with that. Or I suppose he could have initiated some sort of petition either to the court or, or in turn. I guess, let me rephrase my question. What, what does the district think cyber should have done? Well, I mean, again, at the time there was simply no, no policy in place. And I would note too, that even this court has agreed that not every erroneously released prisoner is categorically exempt from being reincarcerated or even necessarily due process. It's a very contextual inquiry. Right. I'm not, I'm not even suggesting that I, that I'm, that I'm forecasting an answer on whether it would or would not have been proper to keep him detained. I'm not, I don't, I'm not trying to get to that question. I'm just trying to understand what the district understanding was as to what should happen in this situation. I don't think in terms of district policy, that that's the very point. I don't think that there was any specific guidance or policy as, as to what should happen because the situation was simply a fairly extraordinary. It was very rare based on the testimony in the record to see someone with an unserved sentence like this. Many times it turned out apparently that they had in fact served their sentence somewhere else in Maryland. But to have someone who was just erroneously released by the Bureau of Prisons was, I believe Mr. Seibert testified that he was shocked when he saw that in the record. And so the question, if we're, I think we're in the realm where there is no express policy. There's no evidence in this record of any direction from a policymaker. And so then you're either in the third or fourth prong of the test set forth in Baker where you're talking about, is there, is there a custom or was there deliberate indifference? And, and I would submit that there is not sufficient evidence in this record to demonstrate a custom of reincarcerating persons who have not served prior sentences because they were erroneously released. I mean, what's, what's set forth by Mr. Hurd is, you know, reference to prior class actions and Bynum and Barnes, which really bear no relationship to what happened in this case. Those are, as the district court put it, garden variety over detentions where there's no reason to believe it was lawful to detain those folks. Was the Attorney General ratified Mr. Seibert's decision? Again, Your Honor. He's a policymaker. And I think if actions are ratified by a policymaker, what happens then under McNeil? Well, so to be sure, if, if actions are ratified by a policymaker, the district can be held liable. But there are two things that I would note. The first is that it has to be the final policy making authority in that area of the city's business. The Attorney General simply does not run the Department of Corrections. And the second thing that I would say is that this ratification argument was not raised in any of the three briefs on summary judgment below the plaintiff filed. It was not raised in any of the two briefs that were filed before this court. Look, I didn't figure out there was a habeas action by myself. He argued that there was this habeas challenge to him, and the district came in and opposed his request for relief. Those facts are in the record. But there's... I can take judicial notice that when D.C. files briefs, they're not just filed by Mr. Seibert. Oh, no, no, no. I'm agreeing that those facts are in the record. What's not in the record is any argument that that ratified the decision to reincarcerate Mr. Heard. I mean, perhaps my colleagues should have made those arguments, and then we would have had an opportunity to respond to them. But quite frankly, you know, when the district is ordered to respond defensively in a lawsuit to allegations to say that that in and of itself is sufficient to hold the district liable under Monell, I'm not aware of any case that says that. I think it would be extraordinary, and I think it would be especially extraordinary to make that holding with no argument in the record, with no notice to the district that this is going to be the theory under which it's held liable under Monell. I mean, this argument is plainly forfeited. And I think that Mr. Heard, having been well counseled, should be held to that forfeiture. I mean, with no briefing to hold that the Attorney General, as opposed to the Director of the Department of Corrections or the City Council, is a policymaker. What if there's a disputed fact, really, about the nature of the policy, written or unwritten, for when they find an unserved sentence in the record? Is it treated the same as the charges and detainers that you said left him no choice? Is it treated as was said at summary judgment, no choice? Or, as you suggested, well, maybe Mr. Seibert was more than just the records agent, and he, in fact, had the discretionary authority, as you suggested, to petition a court for clarification of his status. It seems like a pretty, you know, the nature of Mr. Seibert, whether he had any discretion or not, or whether, in fact, district policy required detention without process, seems to me the critical fact question here. It seems to be very much debated. Well, Your Honor, for that to be the case, there would have to be facts on the other side. And the facts here all indicate that there was no policy. There's an admission by Mr. Hurd that there was no policy. There's testimony by Mr. Seibert that there was no policy. I think there's some talking past each other, if that's what I thought it was. And so, if, in fact, you agree that there is a policy to detain if they find a charge or a detainer. That's what they said on page 19. Okay. I mean, at least an attorney at summary judgment said there's no discretion if you find a court judgment. And then you say, well, that's just lawyers. You're just talking in the brief. The lawyer's just talking there. But I'm assuming that, in fact, that it was more informed than that. And there is this policy about checking records, and there is this sense that Mr. Seibert doesn't have that much authority other than to check records and keep people detained. Um, why isn't that still a disputed fact question? Well, Your Honor, two things. I mean, I understand that there's some skepticism that this choice could have devolved to Mr. Seibert. But that's sort of the essence of the respondeat superior inquiry. I mean, when you have a rogue employee who just- No, no, it's not a rogue. It's only a rogue employee. I guess, is there something in his job description that would let him know he could file petitions with the court to clarify whether- Your Honor, I was asked what process should he have gone through in a hypothetical. To be frank, I don't know exactly what the process should be. Well, I was asked because the question was whether he had any discretion. You were suggesting he did. And if it turns out he doesn't, that is- No, Your Honor, if that's the case, I misunderstood the question that I was responding to. I believed that I was asked, you know, what should he have done in a hypothetical world where, you know, he had discretion. Maybe it was Judge Narvasan's question, so I don't mean to step on it. So if I'm asking in a real world, not a hypothetical world, what could Mr. Seibert have done other than detain him? Real world. What authority did he have to do other than keep him in jail? Well, I mean, I think under the policies, the policies leave it open. I mean, I suppose he could have been- Detain if it's a charge or detainer. But it's up to you if it's a court order, unserved court sentence. It's just- The District of Columbia. It's not. Unserved court sentences and erroneous releases are not mentioned anywhere here. And to Mr. Seibert's credit, he did go ask his supervisor, the chief of the records office. But again, I mean- Does she have any more authority to make a decision? Well, she's the supervisor, but no, she's not a policymaker. She doesn't have the authority. I'm sorry. She's not a policymaker, so she doesn't have the authority to find the district. But where the policy- Does she have the authority to release and say, never mind that unserved sentence? There's no policy that would prevent her from doing that. The only thing that there is, is the court order, which again, the employees here reasonably, but perhaps mistakenly, interpreted as this extrinsic thing, the court order. They interpreted that as a reason to detain him. And again, that may have been mistaken, but it was their choice. Again, there's no policy here governing what happens when you have someone who is erroneously released and has an unserved portion of their sentence. Can you just direct me to where in the appendix, there's the written policy about charges and detainers? Sure. So I don't know that it's in the record. It's a statute and it is DC code section 24-211.02a, as it existed in October, 2011. All right. Can you give me the slide again? Sure. It is DC code section 24-211.02a. And it has changed a little bit since 2011. So what I was reading to you is the 2011 version. I don't think it's changed in a dispositive way. And that refers specifically to charges and detainers? Charger warrant there. Detainers are dealt with in a separate interstate compact on detainers. Let's see. Okay. Make sure my colleagues don't have further questions for you. No. Thank you, Ms. Fanzel. Mr. Rowe, we'll hear from you on rebuttal, two minutes. Thank you, Your Honor. We've talked a lot about policy this morning and policy can mean a lot of things. It can mean an explicit order of the city council, like we have here with the statute. And the version of the statute is Act 19-129. It was in place at the time of these events in October of 2011. And a copy of that is attached as an exhibit to the appellant's brief. So one thing that can be is an explicit ruling. And another can be a custom. Another can be a pattern of deliberate indifference. That policy you talk about talks about a charge or warrant. It does. It mentions that. And the distinction that the District of Columbia is trying to say here is that there's some substantive difference between a charge or warrant that permits them to hold a prisoner who's otherwise subject to release, pursuant to an order of the court. Because the statute relates directly to circumstances in which you can hold a prisoner, notwithstanding an order of the court commanding his release. And it relates directly to that. And so they're saying now that there's another order of the Superior Court that requires him to be confined. That order commanded him or remanded him to the custody of the Attorney General. And that there's some substantive difference between a court order and a warrant or another charge. And under the circumstances here, there really can't be that. That distinction really can't be made. Because what is it that Mr. Siefert was required to do? And it is true. He had no option. This is what his job was. His job was to check the records. And if there was something that prevented Mr. Hurd from being released, his job was to keep Mr. Hurd in jail. And that's what the policy ultimately is here. The policy is something that causes the employees of the District of Columbia to act in a certain way. So, but there is, there's no charge or detainer in this case, right? I mean, you, right. So, so if the, if let's just suppose a world in which there was a policy, a express, even written policy, and the express written policy only income, only refers to charges or detainers, then you may have an argument that there's still no discretion as to an unexpired sentence by dint of a court order that was on the books as of 2006. But the particular policy that I'm hypothesizing that refers specifically to charges or detainers wouldn't cover that situation. You need something else that covers an old court order that imposed a sentence as to which some portion of the sentence has not yet been served. I don't think so, Your Honor, because the question is- You say you don't think so? Sorry, I didn't hear you. The question is whether or not the policy that's there has caused the employee to act. And that's what has happened here. The policy- So can I, I think I understand your argument about causation, but can we just, just not talk about causation for a second? And just, I just want to know, was there a policy that meant that Seibert had no discretion because there was a 2006 sentence by virtue of court order? And I'm hypothesizing a world in which there is a policy that tells someone in Seibert's position, you don't have any authority if there's a charge or a detainer, but it just doesn't say anything about a sentence that was imposed in 2006 as to which some of it has not yet been served. And so then I'm asking you, well, then what fills that gap? Assuming that there were significant, sufficient differences between those circumstances. And if you assume that Mr. Seibert had discretion to make those decisions, then it's up to Mr. Seibert to make that decision. But here he didn't have any such discretion. His obligation was if there's something else out there that requires you to keep him, you got to keep him. And where are you getting that from? And that's what the city council said. And that's what Judge Holloman said. Where did the city council say that? That's in the statute. The statute doesn't talk about mistakenly released prisoners or unexpired sentences, but it does talk about charges and detainers and warrants and things like that. And when you are thinking about that statute and what it governs, it governs all manner of things. Can you show me that statute again? You said it's in the record. It's in the appendix. Yeah, the original is attached to a copy of the appellant's brief as an exhibit. It's addendum number six at page five. And it's in the first paragraph in section 2A. It's addendum five to your brief? Yes, sir. And what it says is the department of corrections shall process and release an inmate from the central detention facility within five hours of a court order granting his or her release unless the inmate is to continue in confinement pursuant to another charge or warrant. And I think it's probably also true that if you're serving a sentence on another charge, that's another charge. And that's what we have here. I would have thought another charge would be a pending charge. Is that not right? Well, it could be. I mean, it doesn't say pending charge here. It's no longer a charge once you're convicted of it. That's true. You know, and at this point in time, you know, the policy was if you can keep him, keep him. And one of the things that was talked about here was this order from Judge Holloman seven months later. I mean, that hearing took place in July of the following year, in seven months or nine months after Mr. Hurd was incarcerated. And what Judge Holloman said, and we've taken the position that this also articulates the policy of the District of Columbia because what he said was in the court's view, um, in circumstances like this, you should keep him and let the court decide. And if that's what you say that, where is that in the record? Uh, that's, uh, I believe, um, he said, that's, um, okay, that's on page eight, one 13, right? That's what I'm having real trouble reading. And can you tell me what the actual transcript page is? Cause my number is on top of each other. So I can't tell what's what number here. Um, hold on a sec. Yeah, it looks like it's 38. It's hard to make out the page numbers, but where on that page, what are you talking about? What's the statement? He says, um, I think it's the end of that first paragraph. It's not within the department of corrections purview. Yeah. Yeah. Says, and this is, um, I think it's, um, hearing transcript on page 38. Yeah. And he says in the court's view, they have an obligation based on that prior order to hold him until the court makes a determination as to what should occur. It's not within the department of corrections purview. How does that help you? That says it's not department. If that's an articulation of what the policy is in the district of Columbia, and this is a superior court judge in the district of Columbia, then it's just one more example of what the policy. And it sounds like the superior court, it's the policy maker. And that quote sounds like the spirit court says, you don't have any choice. Do you see it's up to, there's a court order. You got to. Right.  to do anything other than what he did, then it's the district of Columbia that caused him to act. And that's the issue under Monell is whether or not what is, because the question is, is something that the district of Columbia did as an entity require its employee to act in a certain way. If the answer to that is yes, then the district of Columbia is liable. If the answer to that is no, then the district of Columbia is not liable. And here it was the official policy of the district of Columbia that prisoners were to be held and that the DC prisoners, you know, were to serve their misdemeanor time in the DC jail. And so, you know, with those being the DC policies, Mr. Siebert didn't have an option. He just did what he was supposed to do. He did what his employer told him to do. And under those circumstances, it's not respond yet that superior and respond yet superior that applies. I think we have that part of your argument. Let me just make sure that my colleagues don't have additional questions for you at this time. Okay. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Millett